# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY ORTEGA; and CLEMENTE SANDOVAL, individually, and on behalf of other members of the public similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ITS TECHNOLOGIES & LOGISTICS, LLC; CONGLOBAL INDUSTRIES, LLC; CONGLOBAL TRANSPORT, LLC; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. 5:21-cv-00562-JWH-KKx<br><br>**ORDER DENYING MOTION OF PLAINTIFFS TO REMAND [ECF No. 16]** |

Before the Court is the motion of Plaintiffs Rudy Ortega and Clemente Sandoval to remand this action to state court.[1]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition to the Motion,[2] the Court **DENIES** the Motion, for the reasons set forth herein.

## I. BACKGROUND

### A. Procedural Background

On February 11, 2021, Plaintiffs filed their Complaint commencing this putative class action in the San Bernardino County Superior Court.[3]  In their Complaint, Plaintiffs assert the following eight claims for relief against Defendants ITS Technologies & Logistics, LLC; Conglobal Industries, LLC; and Conglobal Transport, LLC:  (1) Violation of Cal. Lab. Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of Cal. Lab. Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of Cal. Lab. Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of Cal. Lab. Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) Violation of Cal. Lab. Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) Violation of Cal. Lab. Code § 226(a) (Non-Compliant Wage Statements); (7) Violation of Cal. Lab. Code §§ 2800 and 2802 (Unreimbursed Business Expenses); and (8) Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

On March 31, 2021, Defendants removed this action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under the Class Action

---

[1] Pls.' Mot. to Remand (the "Motion") [ECF No. 16].
[2] The Court considered the following papers in connection with the Motion:  (1) Defs.' Notice of Removal of Civil Action (including its attachments) (the "Removal Notice") [ECF No. 1]; (2) Pls.' Compl. (the "Complaint") [ECF No. 1-2]; (3) the Motion (including its attachments); (4) Defs.' Opp'n to the Motion (including its attachments) (the "Opposition") [ECF No. 18]; and (5) Pl.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 22].
[3] Removal Notice ¶ 3; *see also* Complaint.

Fairness Act (the "CAFA"), 28 U.S.C. § 1332(d).[4] Plaintiffs filed the instant Motion on April 30, 2021; Defendants opposed on May 7; and Plaintiffs replied on May 28.

**B.    Factual Allegations**

As alleged in the Complaint, Defendants "employed Plaintiffs as hourly-paid non-exempt employees from 2016 to 2019 in the State of California, County of San Bernardino."[5] Plaintiffs bring this action individually and on behalf of all others similarly situated. The class is defined as "[a]ll current and former California-based . . . hourly-paid or non-exempt employees of Defendants within the State of California at any time during the period from August 16, 2016 to final judgment."[6]

Plaintiffs allege that they and the other hourly-paid non-exempt employee class members (the "PCMs") "worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants."[7] On information and belief, Plaintiffs assert that Defendants "engaged in a pattern and practice of wage abuse" against Plaintiffs and the PCMs, including failing to pay them "for all hours worked, missed meal periods, and missed rest breaks in violation of California law."[8] Plaintiffs further aver that Defendants failed to pay in a timely manner Plaintiffs and other PCMs all wages owed to them upon their discharge or resignation.[9] Defendants also allegedly failed to pay minimum wages;[10] failed to provide accurate wage statements;[11] and failed to reimburse

---

[4]    Removal Notice ¶ 1.
[5]    Complaint ¶ 18.
[6]    *Id.* at ¶ 13.
[7]    *Id.* at ¶ 23; *see also id.* at ¶ 35.
[8]    *Id.* at ¶ 24; *see also id.* at ¶¶ 52–73.
[9]    *See id.* at ¶¶ 30 & 79–84.
[10]   *See id.* at ¶¶ 29 & 74–78.
[11]   *See id.* at ¶¶ 31 & 85–91.

Plaintiffs and the PCMs for business-related expenses.[12] Finally, Plaintiffs contend that those business practices, taken together, are unlawful in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.[13]

## II. <u>LEGAL STANDARD</u>

Federal courts are courts of limited jurisdiction. Accordingly, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In every federal case, the basis for federal jurisdiction must appear affirmatively from the record. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted). Where Congress has acted to create a right of removal, those statutes, unless otherwise stated, are strictly construed against removal jurisdiction. *See id.* Unless otherwise expressly provided by Congress, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a); *see Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013) (internal quotation marks omitted).

To remove an action to federal court under 28 U.S.C. § 1441(a), the removing defendant "must demonstrate that original subject-matter jurisdiction lies in the federal courts." *Syngenta*, 537 U.S. at 33. In other words, the removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the "longstanding, near-canonical rule that the burden on removal rests with the

---

[12] *See id.* at ¶¶ 32 & 92–94.
[13] *See id.* at ¶¶ 34 & 95–101.

-4-

removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." (quotation marks omitted)). Any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remand. *See id.* ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

### III. DISCUSSION

Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under the CAFA. Therefore, Defendants bear the burden of establishing that this Court has original subject matter jurisdiction over the action.

#### A. Legal Standard Under the CAFA

Under the CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity. 28 U.S.C. § 1332(d)(2). To remove a case to federal court under the CAFA, the defendant must demonstrate that the amount in controversy exceeds $5 million, exclusive of interest and costs. *Id.* The general rule is that a removing defendant's well-pleaded amount in controversy allegations "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (in evaluating the amount in controversy, the court first looks to the complaint).

However, where, as here, the plaintiff challenges the removing defendant's jurisdictional allegation, under 28 U.S.C. § 1446(c)(2)(B), "removal . . . is proper on the basis of an amount in controversy asserted" by the defendant only "if the district court finds, by the preponderance of the evidence,

that the amount in controversy exceeds" the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88. "In such a case, both sides submit proof and the court decides . . . whether the amount-in-controversy requirement has been satisfied." *Id.* The preponderance of the evidence standard means that the "defendant must provide evidence establishing that it is *'more likely than not'* that the amount in controversy" meets or exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added). The defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Gaus*, 980 F.2d at 567. In addition to the contents of the notice of removal, the Court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Ibarra*, 775 F.3d at 1197; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). There is no presumption against removal jurisdiction in CAFA cases. *Dart Cherokee*, 574 U.S. at 89.

Here, as a threshold matter, the parties agree that there is minimal diversity, as required by the CAFA. *See* 28 U.S.C. § 1332(d)(2). The only jurisdictional dispute is with respect to the amount in controversy requirement under the CAFA.

B. **Amount in Controversy**

Plaintiffs challenge Defendants' invocation of CAFA jurisdiction on the ground that Defendants have not satisfied the amount in controversy requirement. In their Notice of Removal, Defendants state that the aggregate amount in controversy for all PCMs exceeds $5 million.[14] To calculate the amount in controversy, Defendants analyzed the payroll and employment records of Defendant CSI for the four-year period from February 11, 2017,

---

[14] Removal Notice ¶ 28.

through March 23, 2021 (the "Class Period"),[15] which Defendants summarize as follows:

- There are 1,055 PCMs who currently work or have worked for Defendants as non-exempt employees in California during the Class Period;[16]
- PCMs worked an aggregate of 103,478 workweeks during the Class Period;[17] and
- PCMs had an average hourly rate of $20.30 during the Class Period.[18]

Plaintiffs contend that Defendants have not shown, by a preponderance of the evidence, that the amount in controversy meets or exceeds the $5 million threshold because, according to Plaintiffs, Defendants' assumptions are unreasonable.

### 1. Meal and Rest Period Claims

Plaintiffs' Second Claim for Relief is for Unpaid Meal Period Premiums, and Plaintiffs' Third Claim for Relief is for Unpaid Rest Period Premiums (jointly, the "Meal and Rest Period Claims").

Defendants assume that each PCM experienced one meal and one rest break violation per week. In other words, Defendants assume a 20% violation rate.[19] Plaintiffs contend that assumption is unreasonable. Specifically, they argue that Defendants fail to provide any foundation to support the assumption that the PCMs worked long enough shifts to mandate the provision of meal and

---

[15] That is, the four-year period preceding the filing of the Complaint. *See id.* at ¶ 38.
[16] *Id.* at ¶ 12.
[17] *Id.* at ¶ 38.
[18] *See id.*
[19] *See id.* at ¶ 50 & 54.

rest periods or any documentary evidence to support their calculations.[20] The Court disagrees.

Plaintiffs allege that "Defendants engaged in a pattern and practice of wage abuse," including by failing to pay Plaintiffs and the PCMs for "missed meal periods[] and missed rest breaks in violation of California law."[21] However, Plaintiffs do not allege any facts to show the frequency of the violations, nor do they proffer an alternative violation rate. A removing Defendant is not required to "prove [the plaintiff's] case for [her] by proving the actual rates of violation." *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (citing *Oda v. Gucci Am. Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015)). Thus, in challenging Defendants' violation rate, Plaintiffs cannot simply "rely on the argument that [the defendant] has failed to prove the violation rate without alleging or offering evidence of a lower violation rate." *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *4 (C.D. Cal. Feb. 19, 2019). Indeed, in the absence of controverting evidence or alternative calculations, this Court and other courts in this district have held that a 20% assumed violation rate (or higher) is reasonable. *See Vasquez*, 2020 WL 6778772, at *8 (20% violation rate was reasonable based upon similar allegations (citing cases)); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *2–3 (C.D. Cal. Sept. 12, 2019) (to similar effect); *Salazar v. PODS Enters, LLC*, 2019 WL 2023726, at *2–3 (C.D. Cal. May 8, 2019) (to similar effect).

Accordingly, here, the Court finds that an assumption of one meal period violation and one rest period violation per week is reasonable in view of Plaintiffs' allegations. Defendants additionally discounted their calculation to

---

[20] *See* Motion 5:17–6:15 & 7:1–9:15.
[21] *See* Complaint ¶¶ 24 & 26–28.

assume that only 75% of the putative class suffered violations at that rate. With those assumptions in place, the total amount in controversy for Plaintiffs' Meal and Rest Period Claims is $3,150,905.10.[22]

### 2. Wage Statement Claim

Plaintiffs' Sixth Claim for Relief is for Non-Compliant Wage Statements (the "Wage Statement Claim"). Section 226(a) of the California Labor Code provides that employers shall, "semimonthly or at the time of each payment of wages," furnish each employee with "an accurate itemized statement in writing showing" all of the items of information required by Cal. Lab. Code § 226(a)(1)-(9). The penalty for a violation is "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226. The statute of limitations is one year. *See* Cal. Civ. Proc. Code § 340.

For this claim, Defendants submit that there are 812 PCMs for the period since March 1, 2020.[23] Defendants assume that only half of those PCMs worked at least 27 pay periods to accrue the maximum $4,000 penalty.[24] Accordingly, Defendants calculate the amount in controversy for the Wage Statement Claim as $1,624,000.[25] Plaintiffs contend that Defendants wrongly "presume[] that a 100% violation rate is appropriate simply because Plaintiffs included the words 'pattern and practice'" while ignoring the conditional language in the

---

[22] Meal Period Claim: calculated as $20.30 [one hour of pay] x 1 day per week x 103,478 workweeks x 0.75 = $1,575,452.55; Rest Period Claim: calculated as $20.30 [one hour of pay] x 1 day per week x 103,478 workweeks x 0.75 = $1,575,452.55.
[23] *See* Removal Notice ¶ 60.
[24] *See id.*
[25] *See id.*

Complaint that Defendants failed to provide "Plaintiffs and other class members (but not all)" accurate wage statements, which suggests less than a 100% percent violation rate.[26] That allegation, however, is only conditioned with respect to the number of PCMs who suffered a violation—not with respect to the frequency of the alleged violations. Consistent with Plaintiffs' allegations, Defendants assume that only 50% of the PCMs experienced a wage statement violation. Plaintiffs' allegation that Defendants had a "pattern and practice" of failing to provide accurate wage statements supports application of a 100% violation rate with respect to that 50% of the PCMs whom Defendants assume suffered a violation. *See, e.g.*, *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015).

Accordingly, the Court finds that the amount in controversy for the Wage Statement Claim is $1,624,000.[27]

### 3. Waiting Time Penalty Claim

Plaintiffs' Fifth Claim for Relief is for Final Wages Not Timely Paid (the "Waiting Time Penalty Claim"). Under California law, "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

Defendants submit that 421 employees separated from Defendants' employment since February 11, 2018 (during the relevant limitations period).[28]

---

[26] *See* Reply 5:12–22; .

[27] Calculated as: 812 employees x 0.5 x $4,000 (statutory penalty) = $1,624,000.

[28] Removal Notice ¶ 57.

The average rate of pay for those employees is $17.66 per hour.[29] Based upon Plaintiffs' allegation that Defendants had a "pattern and practice" of failing to pay Plaintiffs and other PCMs upon discharge,[30] in calculating the amount in controversy for the Waiting Time Penalty Claim Defendants assumed a 75% violation rate and the maximum 30-day period of penalties.[31] Plaintiffs contend that Defendants' assumptions are unreasonable for the same reasons stated in the preceding section.[32]

The Court finds that the 75% violation rate Defendants' employ is reasonable in view of Plaintiffs' broad allegations. Furthermore, Defendants' assumption of the maximum 30-day period of penalties is reasonable because Plaintiffs allege that they are entitled to recover "penalty wages for each day they were not paid, up to the thirty (30) day maximum . . . ."[33] *See, e.g., Ramirez*, 2019 WL 2897902, at *5; *Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017).

Accordingly, the amount in controversy for the Waiting Time Penalty Claim is $1,338,274.80.[34]

### 4. Total Amount in Controversy

Based upon the foregoing, the total amount in controversy for Plaintiffs' Second, Third, Fifth, and Sixth Claims for relief alone is $6,113,179.90,[35] which exceeds the $5 million jurisdictional threshold.

---

[29] *Id.*

[30] *See* Complaint ¶¶ 38 & 82.

[31] *See* Removal Notice ¶ 57.

[32] *See* Motion 11:4–12:16; Reply 3:13–5:3.

[33] Complaint ¶ 84.

[34] Calculated as: 421 employees x 8 hours x 30 days x $17.66 average rate of pay x 0.75 = $1,338,274.80.

[35] Calculated as: $3,150,905.10 (Meal and Rest Period Claims) + $1,624,000 (Wage Statement Claim) + $1,338,274.80 (Waiting Time Penalty Claim) = $6,113,179.90.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have shown by a preponderance of the evidence that the amount in controversy meets or exceeds the $5 million threshold under the CAFA. Accordingly, the Court hereby **ORDERS** as follows:

1. Plaintiffs' Motion is **DENIED**.

2. Counsel for the parties are **DIRECTED** to meet and confer and to file, no later than 12:00 noon on October 29, 2021, a Joint Report providing the Court with the parties' respective proposed case schedules, including a briefing schedule on Plaintiffs' anticipated motion for class certification.

3. The Court sets a video Scheduling Conference on November 5, 2021, at 11:00 a.m.

**IT IS SO ORDERED.**

Dated: October 22, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE